IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Vena Mizell, ) | C/A No. 0:14-4484-JMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Vena Mizell, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be remanded for further consideration as explained below.

**SOCIAL SECURITY DISABILITY GENERALLY**

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also

Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform her past relevant work; and

(5)     whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



**ADMINISTRATIVE PROCEEDINGS**

In August 2011, Mizell applied for DIB, alleging disability beginning March 1, 2010. Mizell's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 17, 2013, at which Mizell, who was represented by Paul T. McChesney, Esquire, appeared and testified. The ALJ issued a decision on July 26, 2013 finding that Mizell was not disabled. (Tr. 14-25.)

Mizell was born in 1965 and was forty-four years old on March 1, 2010—her alleged disability onset date. (Tr. 147.) She has a high-school education and has past relevant work experience as a housekeeper in a hotel, a cashier, a production technician in a bakery plant, and a private healthcare sitter. (Tr. 171.) Mizell alleged disability due to depression; anxiety; gastritis; high blood pressure; joint pain in her legs, hands, and ankles; gout-swelling in joints; and muscle spasms. (Tr. 170.)

In applying the five-step sequential process, the ALJ found that Mizell did not engage in substantial gainful activity from March 1, 2010—her alleged onset date—through her date last insured of June 30, 2012. The ALJ also determined that, through her date last insured, Mizell's status post-surgery for right shoulder rotator cuff repair, status post right knee surgery with degenerative joint disease, degenerative disc disease of the cervical spine, migraine headaches, hypertension, morbid obesity, and affective mood disorder characterized by depression were severe impairments. However, the ALJ found that, through her date last insured, Mizell did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that, through her date last insured, Mizell retained the residual functional capacity to



    perform light work as defined in 20 CFR 404.1567(b). Function by function, the claimant is able to lift 20 pounds occasionally and lift or carry up to 10 pounds frequently. The claimant is able to stand or walk appropriately four hours in an eight-hour workday and sit for approximately four to six hours in an eight-hour workday, both with normal breaks. The claimant must be able to exercise a sit/stand option, which is consistent with the above-described exertional limitations. The sit/stand option is described as follows: when the claimant is seated she can alternately elevate either lower extremity to footstool height; the claimant cannot be off task more than five percent of the work period while exercising the sit-stand option (this is above and beyond normal breaks, and calculates as three minutes per hour, or a total of six minutes in two hours of the workday; the time the claimant is off task is scattered throughout any two hour segment of work time, and is used in changing from sitting to standing and vice versa; the claimant is not permitted to leave the workstation while exercising a sit/stand option. The claimant is occasionally able to push and pull with the right upper extremity and frequently able to push and pull with the left upper extremity. The claimant is occasionally able to bilaterally operate foot controls with her lower extremities. The claimant cannot climb ladders, ropes and scaffolds. The claimant is occasionally able to climb ramps and stairs, and can climb no more than 4 to 6 steps at one time, done with the assistance of a single handrail. The claimant is able to balance up to one-half the work period (four[] out of eight). The claimant can occasionally stoop, but cannot crouch, kneel or crawl. The claimant is limited to occasional overhead reaching bilaterally (i.e., with either upper extremity). The claimant should avoid concentrated exposure to extreme cold, excessive vibration, and even moderate exposure to hazards (e.g., use of moving machinery and exposure to unprotected heights). She is limited to occupations that do not involve exposure to direct sunlight (this does not include exposure incurred in traveling to and from work). The claimant must not work in an environment that involves working beneath bright, flashing lights (this does not include exposure to normal neon lighting in the workplace). The claimant is limited to work that involves routine tasks with no fast-paced production rate work, or fast-paced work.

(Tr. 18-19.) The ALJ found that, through her date last insured, Mizell was unable to perform any past relevant work, but that considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Mizell could perform. Therefore, the ALJ found that Mizell was not disabled from March 1, 2010, the alleged onset date, through June 30, 2012, the date last insured.



The Appeals Council denied Mizell's request for review on September 29, 2014, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUE

Mizell raises the following issue for this judicial review:

Opinion evidence. The opinions of Mizell's treating physician contain work-preclusive limitations which the ALJ improperly rejected. Where the ALJ improperly ignores the opinion evidence, can his decision be supported by substantial evidence?

(Pl.'s Br., ECF No. 11.)



**DISCUSSION**

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

Additionally, SSR 96-2p provides that a finding that

> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5.

At issue are two opinions from Dr. Barbara Ray, Mizell's treating physician. The first opinion is dated June 29, 2012 and consists of a questionnaire completed by Dr. Ray indicating that on an eight-hour day, five-day-per-week basis, Mizell could not engage in anything more than sedentary work. Dr. Ray also indicated that if Mizell attempted to work on an eight-hour day, five-day-per-week basis, she would most probably: have to rest away from the work station for ten minutes every hour during the working portion of the day; have to elevate her legs above the waist for twenty minutes every one to two hours; and have problems with attention and concentration sufficient to frequently interrupt tasks during the working portion of the work day, explaining that Mizell would be "distracted by pain and dulled by pain medication." (Tr. 231.) Dr. Ray responded that the diagnoses that underlie the opined impairments were back, knee, and shoulder pain and that the bases for her opinions were Mizell's physical examinations as well as x-rays and MRI abnormalities. Dr. Ray responded that Mizell was impaired at this level since July 24, 2011. (Tr. 231-32.)

The ALJ gave this opinion little weight, describing it as a brief medical source statement. In support of this determination, the ALJ found as follows:

> Although Dr. Ray has a physician-patient relationship with the claimant and is familiar with her symptoms, she fails to provide specific references to objective findings in the record to support such limitations (Exhibit 2F, page 2). Moreover, the



> claimant testified she reported to Dr. Ray the amount of weight she can lift and carry and recalls submitting a form to Dr. Ray from her attorney that needed to be completed, which suggests that Dr. Ray's opinion is based on the claimant's subjective complaints. Furthermore, the claimant testified that Dr. Ray simply asked claimant the questions on the form, and that the claimant supplied the answers reflected on the form. The form and its definitions were supplied by claimant's attorney. Finally, I note that the claimant testified that she discussed her daily activities with Dr. Ray, and that her discussion was essentially identical to her testimony. I have discussed claimant's daily activities above, and I note that claimant's descriptions of what she is capable of doing on a daily basis are simply inconsistent with Dr. Ray's opinion. For all these reasons, I have given little weight to Dr. Ray's opinion.

(Tr. 22.)

The second opinion from Dr. Ray is dated January 14, 2013. This statement provides as follows:

> I treat Vena Miz[]ell as her primary care provider. She suffers primarily from back pain and knee pain both of which are exacerbated by her obesity. She also has neck pain with degenerative disc disease in her cervical spine, but I do not speak to her much about this problem. When I see her in the office she does walk with an antalgic gait that is appropriate to her condition. Her back pain is consistent with her MRI that shows a bulging disc at LS-S1. We are continuing with conservative treatment for this problem. Her knee problem is well documented, and I have referred her to a specialist about this problem. Imaging shows she has moderate to marked degenerative arthritis with loose bodies in the lateral side of her knee and a tear in the posterior horn of the lateral meniscus. Although I did not note swelling in her knees on her last exam, it is consistent with the condition of her knee based on her imaging that she would experience swelling at times. Her knee is in very bad shape. Her knee pain would cause her to be limited to no more than sedentary work. She would need to rest away from the work station with her legs elevated due to her knee pain.
>
> Ms. Mizell also has neuropathy in her wrists documented by studies performed with Dr. Pares. Her wrist problem would limit her to using her bilateral hands for repetitive fine manipulation or wrist motion. She should not lift anything more th[a]n light things such as papers. She also has a rotator cuff problem in her left shoulder. She should not use her left arm more than occasionally during the work day for this reason with occasionally defined as no more than 1/3 total out of an 8 hour work day. I had previously documented a questionnaire that did not

> endorse any limitation related to the use of Ms. Mizell's hands. This is only because I had not yet reviewed Dr. Pares's records.
>
> Whenever I see Ms. Miz[]ell in the office it is clear that she is in pain. She would have pain in either a standing or a seated position. She walks with slow and guarded movements as if in pain. She has difficulty getting on and off the examination table. She does seem distracted by her pain. Her pain would cause her interruptions to concentration sufficient to frequently interrupt tasks throughout the work day. She takes pain medication that could also contribute to causing her interruptions to concentration.
>
> Recently Ms. Miz[]ell has suffered from a sudden onset of severe headache with blurred vision. Because she also had pain and numbness in her hands I was concerned she might have a mass in her brain so we ordered a brain MRI. This showed a lesion at the base of her skull, but it is unclear if this is causing her headaches. At this time we do not yet know if her headaches will be a chronic problem.
>
> Ms. Miz[]el[l] presents as credible and has been compliant with treatment.

(Tr. 380.) This second opinion was not mentioned or otherwise evaluated by the ALJ.

Mizell first argues that the ALJ erred in failing to consider or address the second opinion.[2] Specifically, Mizell argues that Dr. Ray's second opinion provides more details and conflicts with some of the reasons the ALJ offered for rejecting Dr. Ray's first opinion. Although the Commissioner suggests several reasons for discounting this opinion as well, the court is constrained to recommend remanding this matter for consideration on Dr. Ray's second opinion in the first instance by the ALJ. In failing to mention or address this opinion, it is unclear whether the ALJ was aware that a second opinion existed. Cf. Craig, 76 F.3d at 589 (explaining that in reviewing the

---

[2] Mizell also argues that the ALJ erred in giving little weight to the first opinion, challenging all of the reasons offered by the ALJ. However, in light of the court's recommendation that this matter be remanded for further consideration, the court need not address this other issue, as it may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Mizell may present her additional arguments on remand.



evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").  Moreover, further consideration of this opinion may impact the ALJ's evaluation of Dr. Ray's first opinion, as well as impact the ALJ's residual functional capacity assessment and ultimate evaluation of the sequential process.[3]  Thus, the court is unable to determine whether the ALJ's decision is supported by substantial evidence.

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 22, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[3] The court expresses no opinion as to whether further consideration of the evidence by the ALJ should lead to a finding of disability during the time period at issue.  Further analysis and discussion may well not affect the ALJ's conclusions in this case.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).